**C.O. LAW, APC**
Clark Ovruchesky, Esq. (SBN: 301844)
co@colawcalifornia.com
845 15th St., Suite 103
San Diego, California 92101
Telephone: (619) 356-8960
Facsimile: (619) 330-7610

**OLYMPUS LAW CORPORATION**
George C. Panagiotou, Esq. (SBN: 263172)
845 15th St., Suite 103
San Diego, CA 92101
Telephone: (858) 300-0033
Facsimile: (858) 408-2939

*Attorneys for Plaintiff,*
MORENA RAMIREZ GAMEZ



**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **MORENA RAMIREZ GAMEZ,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**COMENITY BANK, BANK OF AMERICA, N.A., CITIBANK, N.A., EXPERIAN INFORMATION SOLUTIONS, INC., and TRANS UNION LLC,**<br><br>**Defendants.** | **Case No.:**<br><br>**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:**<br><br>**1.) THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §§ 1681, ET SEQ.; AND**<br><br>**2.) CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT, CAL. CIV. CODE §§ 1785.1, ET SEQ.**<br><br>**JURY TRIAL DEMANDED** |

C.O. LAW, APC
845 15TH ST., SUITE 103
SAN DIEGO, CA 92101

## INTRODUCTION

1. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2. Plaintiff MORENA RAMIREZ GAMEZ ("Ms. Gamez" or "Plaintiff"), through her attorneys, brings this lawsuit to challenge the actions of Defendants BANK OF AMERICA, N.A. ("BANK OF AMERICA," "Furnisher-Defendants," or "Defendants"), CITIBANK, N.A. ("CITIBANK," "Furnisher-Defendants," or "Defendants"), COMENITY BANK, ("COMENITY," "Furnisher-Defendants," or "Defendants"), EXPERIAN INFORMATION SOLUTIONS, INC. ("EXPERIAN", the "Credit Bureaus", or "Defendants") and TRANSUNION LLC ("TRANSUNION", the "Credit Bureaus", or "Defendants"), with regard to Defendants' reporting of erroneous negative and derogatory reports to Plaintiff's credit reports, and Defendants' failure to correct such information, which Defendants knew or should have known was erroneous and which caused Plaintiff damages.

///

///

3. Plaintiff makes these allegations on information and belief, with the exception of allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

4. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

5. Unless otherwise stated, all the conduct engaged in by Defendants occurred in California.

6. Any violations by Defendants were knowing and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

7. Unless otherwise indicated, the use of any Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of that Defendant named.

## JURISDICTION AND VENUE

8. Jurisdiction of this Court arises pursuant to 28 U.S.C. §1331; 15 U.S.C. § 1681p; and, 28 U.S.C. § 1367 for supplemental state law claims.

9. This action arises out of Defendants' violations of (i) the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq. ("FCRA") and (ii) the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code §§ 1785.1. et seq. ("CCRAA").

10. The Court has personal jurisdiction over Defendants as Defendants conduct business within the State of California and have purposefully availed themselves of the laws and markets of the State of California and this district.

11. Venue is proper in the United States District Court, Central District of California pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in the County of Los Angeles, State of California, which is within this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and, (iii) Defendants conducted business within this judicial district at all times relevant.

C.O. LAW, APC
845 15TH ST., SUITE 103
SAN DIEGO, CA 92101

## PARTIES

12. Plaintiff is a natural person who resides in the City of Los Angeles, County of Los Angeles, in the State of California. In addition, Plaintiff is a "consumer" as that term is defined by Cal. Civ. Code § 1785.3(b) and 15 U.S.C. § 1681a(c).

13. Defendant BANK OF AMERICA is a national banking association whose primary corporate address is in the City of Charlotte, in the State of North Carolina, and is authorized to do business in the State of California.

14. Defendant CITIBANK is a national banking association whose primary corporate address is in the City of Sioux Falls, in the State of South Dakota, and is authorized to do business in the State of California.

15. Defendant COMENITY is a corporation, whose primary corporate address is in the City of Columbus, in the State of Ohio, and is authorized to do business in the State of California.

16. Defendant EXPERIAN is a corporation whose primary corporate address is in the City of Costa Mesa, in the State of California, and is authorized to do business in the State of California.

17. Defendant TRANSUNION is a limited liability company whose primary corporate address is in the City of Chicago, in the State of Illinois, and is authorized to do business in the State of California.

18. The Furnisher-Defendants are furnishers of information as contemplated by FCRA sections 1681s-2(a) & (b), which regularly and in the ordinary course of business furnish information to one or more consumer reporting agencies about consumer transactions or experiences with any consumer.

19. Plaintiff is informed and believes, and thereon alleges, that the Furnisher-Defendants in the ordinary course of business, regularly, on behalf of themselves or others, engage in "debt collection" as that term is defined by California Civil Code § 1788.2(b), and are each therefore a "debt collector" as that term is defined by California Civil Code § 1788.2(c).

C.O. LAW, APC
845 15TH ST., SUITE 103
SAN DIEGO, CA 92101

20. The Credit Bureaus are each a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f) and Cal. Civ. Code § 1785.3.

21. The causes of action herein also pertain to Plaintiff's "consumer [credit] report" as that term is defined by 15 U.S.C. § 1681a(d)(1) and Cal. Civ. Code § 1785.3(c), in that inaccurate credit information was reported by Defendants regarding specific transactions and/or experiences pertaining to Plaintiff and Plaintiff's credit worthiness, credit standing, and credit capacity. Such credit information was used or was expected to be used, or collected in whole or in part, for the purposes of serving as a factor in establishing Plaintiff's eligibility for, among other things, credit to be used primarily for personal, family, household and employment purposes.

## GENERAL ALLEGATIONS

22. At all times relevant to this matter, Plaintiff was an individual residing within the State of California.

23. Furthermore, Defendants conducted business within the State of California at all times relevant.

24. On or around April 18, 2024, Plaintiff filed for a no-asset Chapter 7 bankruptcy in the United States Bankruptcy Court for the Central District of California. Plaintiff's case was assigned Case Number 2:24-bk-12996-WB (the "Bankruptcy").

25. Plaintiff's Bankruptcy successfully discharged on July 22, 2024, and Plaintiff's accounts and debts with the Furnisher-Defendants were included in Plaintiff's discharge.

26. However, the Furnisher-Defendants reported or caused to be reported inaccurate information after the Bankruptcy was filed and discharged on Plaintiff's credit reports.

///

///

C.O. LAW, APC
845 15TH ST., SUITE 103
SAN DIEGO, CA 92101

27. The Consumer Data Industry Association's ("CDIA") Metro 2 format is the credit industry's standardized, objective reporting format used by furnishers to provide information about consumer accounts to consumer reporting agencies.[1]

28. Upon information and belief, Defendants have adopted the *Metro 2 Format Manual* as its standard instruction book in respect to credit reporting.

29. The CII status field is a critical field for consumers and directly relates to and impacts a consumer's credit worthiness.

30. CII Metro 2 Code "E" denotes that a Chapter 7 bankruptcy has been discharged.

31. The lack of an accurate reporting of the CII field makes it appear that a consumer has not addressed outstanding debt obligations through the bankruptcy process.

32. The lack of an accurate reporting of the CII field also suggests that creditors are free to collect against a consumer per their pre-bankruptcy contract terms, which is inaccurate and materially misleading due to the effect of the bankruptcy orders, such as the automatic stay of section 362 of Title 11, that exist to prevent post-petition collection activity, and the discharge order which enjoins post-discharge collection upon any *in personam* liability for a claim.

33. Accordingly, failure to report the correct CII indicator would prompt those making credit decisions to draw a more negative inference regarding a consumer's credit worthiness.

34. Once a Chapter 7 Bankruptcy is successfully completed, furnishers for unsecured accounts included in the bankruptcy, including Furnisher-Defendants' accounts, are instructed to report the CII status as "Discharged/completed through BK Chapter 7", report "Current Balance", "Scheduled Monthly Payment Amount", and "Amount Past Due" as "Zero"

[1] *See* Consumer Financial Protection Bureau, Key Dimensions and Processes in the U.S. Credit Reporting System, available at: http://files.consumerfinance.gov/f/201212_cfpb_credit-reporting-white-paper.pdf

C.O. LAW, APC
845 15TH ST., SUITE 103
SAN DIEGO, CA 92101

(i.e. $0), and report "D", i.e. "no data", in the "Payment History" section.

35. Moreover, as a result of a major class action settlement in 2008, the three nationwide CRAs—i.e. the Credit Bureaus—have been required to revise their procedures as to how they report debts discharged in a chapter 7 bankruptcy.[2]

36. The settlements essentially reverse the presumption of non-dischargeability that the CRAs had been applying to chapter 7 bankruptcies. They require the CRAs to treat all prebankruptcy debts as discharged, unless furnishers provide information showing that a debt was excludable from discharge. The CRAs are to no longer report as charged off or placed in collection debts that in fact have been discharged in bankruptcy.

37. These procedures rely on the fact that furnishers are contractually obligated to report debts with codes that correspond to the major categories of non-dischargeable debt (that is, student loans, unpaid taxes, domestic support obligations, and debts subject to reaffirmation agreements). Using what is termed an "Agreed Bankruptcy Coding," the CRAs are to set to zero the stated balance owed for other debts—those that usually are dischargeable—*and* show them as having been discharged. This whole process is easily automated because the CRAs normally can ascertain from the information in their own credit files when a consumer's prebankruptcy debt has not in fact been discharged.

///

///

///

[2] *White v. EQUIFAX Info. Solutions, Inc.*, Case No. CV 05-01070 (C.D. Cal. Aug. 19, 2008) (lead case number); *White v. Equifax Info. Serv.*, L.L.C., Case. No. CV 05-7821 (C.D. Cal. Aug. 19, 2008); *White v. Trans Union*, L.L.C., Case No. CV 05-1073 (Aug. 19, 2008); *Hernandez v. Equifax Info. Serv.*, L.L.C., Case. No. CV 06-3924 (C.D. Cal. Aug. 19, 2008).

C.O. LAW, APC
845 15TH ST., SUITE 103
SAN DIEGO, CA 92101

38. These revised procedures and assumptions were applied both retroactively *and* prospectively. With respect to current credit files, the three major CRAs were directed to retroactively "scrub" existing data to remove improper tradelines and civil judgments.

39. Despite this reform, there continue to be problems with improper reporting of discharged debts, including allegations that creditors have deliberately engaged in the practice in order to pressure debtors to pay off discharged debts, and even refusals to correct the reporting after being requested to do so by the debtor.[3] Indeed, the frequency of cases in which debtors had complained of the failure to properly report accounts included in bankruptcy has led one court to observe the "sheer number of such cases may suggest that some creditors are systematically taking such action in an effort to diminish the value of a discharge in bankruptcy."[4]

40. However, despite this knowledge the Furnisher-Defendants consistently followed faulty and deceptive procedures in their credit reporting practices for post-bankruptcy consumers like Plaintiff, and the Credit Bureaus have continued to fail to adopt reasonable procedures to eliminate the reporting errors that it knew or should have reasonably been aware of.

///

///

[3] *See, e.g.*, *Belton v. GE Capital Consumer Lending* (*In re Belton*), 2014 WL 5819586 (Bankr. S.D.N.Y. Nov. 10, 2014). *See also* Jessica Silver Greenberg, Debts Canceled by Bankruptcy Still Mar Consumer Credit Scores, N.Y. Times, Nov. 12, 2014. *Keil v. Equifax Info. Serv.*, 2014 WL 4477610 (N.D. Cal. Sept. 10, 2014) (in response to debtor's dispute, credit union stated its policy was to report all charged-off debts as unpaid, irrespective of bankruptcy discharge); *In re Haynes*, 2014 WL 3608891 (Bankr. S.D.N.Y. July 22, 2014) (debtor alleged that creditor refused his request to remove charge-off notation from account discharged in bankruptcy).

[4] *Norman v. Applied Card Sys.* (*In re Norman*), 2006 WL 2818814 (Bankr. M.D. Ala. Sept. 29, 2006).

C.O. LAW, APC
845 15TH ST., SUITE 103
SAN DIEGO, CA 92101

41. The FCRA imposes obligations on CRAs relating to consumers who have filed petitions for bankruptcy that require such CRAs to report the particular chapter of Title 11 under which the petition was filed and that limit the amount of time they may report bankruptcy information to a maximum of ten years. 15 U.S.C. §§ 1681c. Nothing in this statutory provision of the FCRA suggests that there is an exception to a CRAs standard obligation to employ reasonable procedures to ensure maximum possible accuracy for bankruptcy-related information.[5]

42. Accordingly, the Credit Bureaus' conduct was willful and reckless disregard of their rights and obligations under the FCRA.

43. As explained in more detail below, Defendants failed to reference the bankruptcy filing and discharge in the "CII" credit reporting field in Plaintiff's credit report in respect to the Furnisher-Defendants' accounts successfully discharged through Plaintiff's Chapter 7 Bankruptcy.

44. Defendants also failed to report a zero balance for Plaintiff's accounts with the Furnisher-Defendants, even though the accounts successfully discharged in the Bankruptcy.

45. The failure to report the correct status of "Discharged in Bankruptcy" with a zero balance inaccurately and misleadingly suggested that Plaintiff still has a personal legal responsibility to pay the alleged debts to the Furnisher-Defendants, which is the opposite effect of receiving a Chapter 7 bankruptcy discharge.

---

[5] *See also* 16 C.F.R. 600 app. § 607(3)(A)(6); *id.* § 607(3)(F)(2) ("[A] consumer reporting agency may include delinquencies on debts discharged in bankruptcy in consumer reports, but must accurately note the status of the debt (e.g., discharged, voluntarily repaid)."); *id.* § 607(3)(F)(1) ("A consumer reporting agency must employ reasonable procedures to keep its file current on past due accounts (e.g., by requiring its creditors to notify the credit bureau when a previously past due account has been paid or discharged in bankruptcy)[.]"). *White v. Trans Union, LLC*, 462 F. Supp. 2d 1079, 1082 (C.D. Cal. 2006).

C.O. LAW, APC
845 15TH ST., SUITE 103
SAN DIEGO, CA 92101

46. Furnishers utilizing the Metro 2 reporting standard correctly is crucial because the Metro 2 system creates a uniform standard for the meaning given to each field provided, which fosters consistency in how furnishers formulate data to report to the credit bureaus, which ultimately leads to objective credit evaluations and scores for consumers.

47. Moreover, the FCRA and CCRAA impose no requirement or mandate that a furnisher provide any information to a consumer reporting agency. Indeed, the CDIA has repeatedly noted that the act of furnishing information to a consumer reporting agency is completely voluntary.[6]

48. Because credit reporting is a voluntary act, Defendants' deviation from the Metro 2 format instructions—the industry standard and their respective chosen method of reporting—constitutes an inaccurate or misleading statement. This is because those making credit decisions, who would expect that furnishers like the Furnisher-Defendants would adhere to the Metro 2 format, would view the reporting of accounts included in the Bankruptcy in their delinquent pre-bankruptcy form more negatively than if the accounts reported accurately.

49. With respect to their FCRA investigations, Plaintiff alleges the Furnisher-Defendants, rather than train their employees how to properly review and investigate disputes, are generally expected to simply confirm whatever information being reported is accurate, rather than conducting an actual reasonable investigation.

50. Similarly, Plaintiff alleges the Credit Bureaus each have a policy of simply parroting whatever information is provided by furnishers rather than conducting reasonable reinvestigations under the FCRA and CCRAA.

---

[6] *See, e.g.*, Credit Reports: Consumers' Ability to Dispute and Change Inaccurate Information: Hearing Before the H. Comm. on Fin. Serv., 110 Congr. 50 (2007) (written statement of Stuart Pratt, President and CEO, Consumer Data Industry Association) ("not a single one of the more than 18,000 data furnishers has to provide a single record of data to our members").

C.O. LAW, APC
845 15TH ST., SUITE 103
SAN DIEGO, CA 92101

51. This is because the investigation and reinvestigations conducted by the Defendants occur in a hurried, conveyor-belt styled atmosphere in which dispute operators are under pressure to process disputes quickly to meet production quotas. This atmosphere is conducive to a speed-minded dispute operator failing to consider, or not looking for, information that is relevant to the consumer's dispute.

52. Such conduct by Defendants is willful and reckless.

53. Furthermore, the Credit Bureaus' policies and procedures for maintaining and operating their internal databases were not reasonable, because they continued reporting patently inaccurate and materially misleading information after Plaintiff formally disputed the reporting.

54. The Credit Bureaus also had knowledge of the Bankruptcy and directly receiving notice of the Bankruptcy's successful discharge. Accordingly, the Credit Bureaus failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff and violated 15 U.S.C. § 1681e(b) and Cal. Civ. Code §1785.14(b).

55. As a direct and proximate result of the derogatory information furnished and reported by Defendants, Plaintiff has sustained actual damages including emotional distress, humiliation, embarrassment, anxiety, loss of sleep, defamation of character, pain and suffering, was impeded in seeking necessary products and services from vendors, and damages to his credit rating.

56. As a further direct and proximate result of Defendants' acts stated herein, Plaintiff has spent many hours and associated costs reviewing credit reports, disputing the incorrect information furnished by Defendants via certified mail, and incurred attorneys' fees and such further expenses in an amount to be determined at trial.

57. Moreover, Plaintiff was denied applications for credit with multiple creditors due to Defendants' inaccurate reporting.

C.O. LAW, APC
845 15TH ST., SUITE 103
SAN DIEGO, CA 92101

58. Plaintiff has also refrained from attempting to obtain further credit knowing that Defendants' inaccurate reporting is appearing on her credit reports.

59. This chilling effect has precluded Plaintiff from benefiting from Plaintiff's improving credit.

60. This chilling effect has also precluded Plaintiff from improving Plaintiff's credit further by establishing new positive accounts.

61. This inability has further exacerbated Plaintiff's frustration with Defendants since Plaintiff already made the difficult decision to file a bankruptcy in the first place.

62. Defendants' continued negative reporting has forced Plaintiff to unfairly suffer the burdens of a bankruptcy without any of the associated, and expected, benefits.

63. Namely, Plaintiff has been precluded from the fresh start that Plaintiff sought.

64. Based upon the discussion above, Plaintiff contends that punitive damages are available to Plaintiff.

C.O. LAW, APC
845 15TH ST., SUITE 103
SAN DIEGO, CA 92101

**INACCURATE AND MATERIALLY MISLEADING CREDIT INFORMATION**
**BANK OF AMERICA Account Nos.: 440066066525****, 440066265873****, 440066643966****, and 440066685645****, CITIBANK Account No.: 603534012522****, and COMENITY BANK Account Nos.: 539176112448****, 778840205113****, and 578097102627**** (the "Accounts")**

65. The Accounts are debts incurred prior to the filing of Plaintiff's Bankruptcy, were properly scheduled in the Bankruptcy, and were discharged pursuant to the discharge order entered on July 22, 2024.

66. Defendants each received notice of Plaintiff's discharge on or about July 24, 2024.

///

///

67. Despite the discharge of the Accounts, which extinguished Plaintiff's personal liability thereon, Defendants have inaccurately reported the Accounts on Plaintiff's credit reports with a balance and/or past due amount and/or in charged off status and/or without noting that the Accounts have been discharged in bankruptcy.

68. The inaccurate reporting of the Accounts includes, but is not limited to, reporting a balance due, a past due amount, a scheduled monthly payment, and/or a status of "charged off" or similar derogatory notation, without properly updating the Accounts to reflect that they were discharged in Chapter 7 bankruptcy.

69. The balances owing and inaccurate status reported by Furnisher-Defendants post-discharge inaccurately and misleadingly suggested (to potential creditors) that Plaintiff: (1) Was still legally liable to repay the alleged debt; (2) Incurred new debt during the Bankruptcy; or (3) Reaffirmed the debt notwithstanding the discharge. Furnisher-Defendants' reporting deviated from Metro 2 reporting instructions in these respects.

70. However, Plaintiff did not incur new debt with Furnisher-Defendants during the Bankruptcy proceeding or reaffirm the Accounts in the Bankruptcy. Plaintiff's debts with Furnisher-Defendants were discharged in the Bankruptcy.

71. As of dates prior to and/or concurrent with Plaintiff's disputes in February and April 2025, the Accounts were reporting on Plaintiff's credit reports issued by the Credit Bureaus in a manner similar to the following:

    a. BANK OF AMERICA Account No. 440066066525**** reported with a balance of approximately $1,091 and status as "Account charged off."
    b. BANK OF AMERICA Account No. 440066265873**** reported with a balance of approximately $4,753 and status as "Account charged off."
    c. BANK OF AMERICA Account No. 440066643966**** reported with a balance of approximately $3,831 and status as "Account charged off."

C.O. LAW, APC
845 15TH ST., SUITE 103
SAN DIEGO, CA 92101

d. BANK OF AMERICA Account No. 440066685645**** reported with a balance of approximately $3,063 and status as "Account charged off."

e. CITIBANK Account No. 603534012522**** (Macy's) reported with a balance of approximately $2,859 and status as "Account charged off."

f. COMENITY BANK Account No. 539176112448**** (Victoria's Secret) reported with a balance of approximately $956 and status as "Account charged off."

g. COMENITY BANK Account No. 778840205113**** (Alphaeon) reported with a balance of approximately $2,371 and status as "Account charged off."

h. COMENITY BANK Account No. 578097102627**** (Forever 21) reported with a balance of approximately $1,285 and status as "Account charged off" or "written off."

C.O. LAW, APC
845 15TH ST., SUITE 103
SAN DIEGO, CA 92101

72. This reporting is inaccurate and materially misleading because, following the discharge, the balance on each Account is $0, there is no past due amount, there is no scheduled monthly payment, the Accounts are closed, and the proper status is "discharged in Chapter 7 bankruptcy" (or equivalent), with no ongoing obligation or delinquency.

73. By inaccurately reporting the Accounts with balances owing and/or in charged off status after the discharge, without properly noting the bankruptcy discharge, Defendants misrepresented the legal status of the debts and failed to comply with industry standards for reporting discharged debts, including but not limited to the Metro 2® format guidelines requiring a Consumer Information Indicator (CII) code reflecting discharge in Chapter 7, a current balance of $0, and an appropriate payment status indicating the account is closed with no balance.

74. Rather than using the bankruptcy information sent specifically to Defendants to accurately update the Accounts on Plaintiff's credit reports, which Defendants knew or should have known existed, Defendants continued reporting

inaccurately on Plaintiff's credit reports. These notices from the bankruptcy court were sufficient to inform Defendants that a past due status with an outstanding balance amount would be "incomplete or inaccurate" and "materially misleading." *Huizar v. Wells Fargo Bank, N.A.*, 257 F. Supp. 3d 1103, 1109 (E.D. Cal. 2017).

75. Defendants could have simply reviewed the bankruptcy records discussed above and received by Defendants and recognized that their reporting of balance owing with no notation of the bankruptcy discharge following the Bankruptcy was inaccurate, misleading, and outdated. Defendants should have also consulted the Metro 2 guidelines for bankruptcy accounts delineated above to confirm that the proper status following the Bankruptcy was "Discharged through Bankruptcy" with a zero balance. Instead, Defendants chose to ignore their duty to update their obsolete reporting.

76. Therefore, Defendants' inaccurate, materially misleading, and negative reporting of the Debts in light of their knowledge of the Bankruptcy was willful.

77. Through this conduct, Furnisher-Defendants violated Cal. Civ. Code § 1785.25(a) by furnishing information to the Credit Bureaus that Furnisher-Defendants knew or should known was inaccurate and materially misleading.

78. Furthermore, the Credit Bureaus' policies and procedures for maintaining and operating their internal databases were not reasonable, because they allowed the reporting of patently inaccurate and materially misleading information by Furnisher-Defendants, despite having knowledge of the Bankruptcy and directly receiving notice of the Bankruptcy's successful discharge.

79. Specifically, the Credit Bureaus could have easily ascertained that the Accounts had no further obligation owed on them by reviewing the publicly available and accessible bankruptcy records discussed above, consulting the Metro 2 guidelines for bankruptcy accounts delineated above, and/or abiding by their obligations under the *White v. EQUIFAX Info Solutions, Inc. et al.* class action

C.O. LAW, APC
845 15TH ST., SUITE 103
SAN DIEGO, CA 92101

settlement terms discussed above.

80. Therefore, the Credit Bureaus' inaccurate and negative reporting of the Debts in light of their knowledge of the Bankruptcy was willful.

81. Accordingly, the Credit Bureaus failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff and violated 15 U.S.C. § 1681e(b) and Cal. Civ. Code §1785.14(b).

82. Alternatively, upon information and belief, Furnisher-Defendants properly updated the Accounts' status as "Included/Discharged through Bankruptcy" with a zero balance and zero amount past due following the Bankruptcy. However, the Credit Bureaus unilaterally and inaccurately removed that status and included a balance owing, despite Furnisher-Defendants' instructions.

83. Therefore, the Credit Bureaus' inaccurate and negative reporting of the Debts in light of their knowledge of the Bankruptcy was willful.

84. Therefore, the Credit Bureaus failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff and violated 15 U.S.C. § 1681e(b) and Cal. Civ. Code §1785.14(b).

85. On or about February 7, 2025 and April 14, 2025, Plaintiff disputed the inaccurate and materially misleading reporting of the Accounts by sending written dispute letters via certified mail to the Credit Bureaus (EXPERIAN and TRANSUNION), expressly notifying them that the Accounts had been discharged in her Chapter 7 bankruptcy (Case No. 2:24-bk-12996-WB, discharged July 22, 2024), and requesting that the Accounts be updated to report a $0 balance, closed status, inclusion/discharge in bankruptcy, and deletion of any post-petition delinquencies or derogatory notations inconsistent with the discharge.

86. Plaintiff enclosed with her disputes copies of her identification and other supporting documentation.

C.O. LAW, APC
845 15TH ST., SUITE 103
SAN DIEGO, CA 92101

87. The Credit Bureaus received Plaintiff's disputes and, upon information and belief, forwarded notice of the disputes (via ACDV, e-OSCAR, or similar system) to the Furnisher-Defendants, along with the relevant information provided by Plaintiff.

88. Despite receiving notice of the disputes and the bankruptcy discharge, the Furnisher-Defendants failed to conduct a reasonable investigation of the disputed information, failed to review all relevant information provided, and/or negligently or willfully directed or caused the Credit Bureaus to continue reporting the Accounts inaccurately or to verify the inaccurate information without proper correction.

89. The Credit Bureaus likewise failed to conduct a reasonable reinvestigation, failed to delete or properly modify the disputed information, and/or reported the disputed items as "verified" without ensuring compliance with the bankruptcy discharge.

90. As evidenced by the investigation results and subsequent credit reports issued by the Credit Bureaus following Plaintiff's February and April 2025 disputes, the Accounts continued to be reported in an inaccurate and/or materially misleading manner.

91. By inaccurately reporting account information relating to the Accounts after notice and confirmation of the bankruptcy discharge and disputes, Defendants failed to take the appropriate measures as required by 15 U.S.C. §§ 1681s-2(b)(1)(A)-(E) and related provisions.

92. Upon information and belief, the Credit Bureaus' respective reinvestigations were not reasonable. More specifically, the Credit Bureaus should have discovered from their records, including Plaintiff's official dispute letters, that the information Furnisher-Defendants were reporting was inaccurate and materially misleading. The Credit Bureaus could have easily ascertained that the Accounts had no further obligation owed on them by reviewing the publicly

C.O. LAW, APC
845 15TH ST., SUITE 103
SAN DIEGO, CA 92101

available and accessible bankruptcy records discussed above, consulting the Metro 2 guidelines for bankruptcy accounts delineated above, or contacting Plaintiff for more information.

93. Therefore, the Credit Bureaus conducted a superficial "reinvestigation" and merely doubled-down on their inaccurate reporting for the Accounts. This has continued to hurt Plaintiff's credit standing.

94. Even with notice of the Bankruptcy filing and discharge, the Credit Bureaus allowed Furnisher-Defendants to report the above inaccurate information despite their obligations under the *White v. EXPERIAN Info Solutions, Inc. et al.* class action settlement terms discussed above.

95. Rather than using the publicly available bankruptcy information the Credit Bureaus knew or should have known existed, the Credit Bureaus chose to allow Furnisher-Defendants to continue reporting inaccurately on Plaintiff's credit reports.

96. Therefore, the Credit Bureaus inaccurate and negative reporting of the Debts in light of their knowledge of the Bankruptcy was willful and reckless.

97. Accordingly, the Credit Bureaus failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff and violated 15 U.S.C. § 1681e(b) and Cal. Civ. Code §1785.14(b).

98. The Credit Bureaus also failed to conduct a reasonable reinvestigation of Plaintiff's dispute, as required by 15 U.S.C. §1681i and Cal. Civ. Code §1785.16.

99. Upon information and belief, Furnisher-Defendants' respective investigations were also not reasonable. More specifically, Furnisher-Defendants should have discovered from their records, including Plaintiff's official dispute letters, that the information Furnisher-Defendants were reporting was inaccurate and materially misleading. Specifically, Furnisher-Defendants could have simply reviewed the bankruptcy records discussed above and recognized that their

C.O. LAW, APC
845 15TH ST., SUITE 103
SAN DIEGO, CA 92101

reporting of an outstanding balance with no bankruptcy status following the Bankruptcy was inaccurate, misleading, and outdated.

100. Furnisher-Defendants should have also consulted the Metro 2 guidelines for Accounts to confirm that the proper status following the Bankruptcy was "Discharged through Bankruptcy" with a zero balance.

101. Accordingly, Furnisher-Defendants failed to conduct a reasonable investigation with respect to the disputed information as required by 15 U.S.C. § 1681s-2(b) by:

   a. Failing to remove all of the disputed and incorrect information;
   b. Failing to update Plaintiff's Account (history); and
   c. Failing to notate, as required, Plaintiff's dispute.

102. Through this conduct, Furnisher-Defendants have violated Cal. Civ. Code § 1785.25(a) by furnishing information to the Credit Bureaus, i.e. each a consumer reporting agency, that Furnisher-Defendants knew or should known was inaccurate and materially misleading.

103. Defendants failed to review all relevant information provided by Plaintiff in the dispute to the Credit Bureaus as required by and in violation of 15 U.S.C. § 1681s-2(b)(1)(B).

104. Due to Defendants' failure to reasonably (re)investigate, they each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C).

105. Plaintiff's efforts to correct Defendants' erroneous and negative reporting of the Debts by communicating Plaintiff's dispute with Defendants were fruitless.

106. Defendants' continued inaccurate and negative reporting of the Debts in light of its knowledge of the actual error was willful.

///

///

C.O. LAW, APC
845 15TH ST., SUITE 103
SAN DIEGO, CA 92101

107. Defendants' failure to correct the previously disclosed inaccuracies on Plaintiff's credit report was intentional and in reckless disregard of its duty to refrain from reporting inaccurate information. Accordingly, Defendants willfully and negligently failed to comply with its duty to reasonably investigate Plaintiff's dispute.

108. Defendants' inaccurate reporting damaged Plaintiff's creditworthiness.

109. By inaccurately reporting account information relating to the Debts after notice and confirmation of its errors, Defendants failed to take the appropriate measures as determined in 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E).

## CAUSES OF ACTION

## COUNT I

## VIOLATION OF THE FAIR CREDIT REPORTING ACT

## 15 U.S.C. §§ 1681 ET SEQ.

## [AGAINST ALL DEFENDANTS]

110. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

111. The foregoing acts and omissions constitute numerous and multiple willful, reckless, or negligent violations of the FCRA, including, but not limited to, each and every one of the above-cited provisions of the FCRA, 15 U.S.C. § 1681.

112. As a result of each and every negligent noncompliance of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2), from Defendants.

113. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Defendants.

C.O. LAW, APC
845 15TH ST., SUITE 103
SAN DIEGO, CA 92101

C.O. LAW, APC
845 15TH ST., SUITE 103
SAN DIEGO, CA 92101

## COUNT II

## VIOLATION OF CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT

## CAL. CIV. CODE § 1785.1 ET SEQ.

## [AGAINST ALL DEFENDANTS]

114. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

115. The foregoing acts and omissions constitute numerous and multiple violations of the California Consumer Credit Reporting Agencies Act.

116. As a result of each and every negligent violation of the CCRAA, Plaintiff is entitled to damages as the Court may allow pursuant to Cal. Civ. Code § 1785.31(a)(1) from Defendants.

117. As a result of each and every willful violation of the CCRAA, Plaintiff is entitled to damages as the Court may allow pursuant to Cal. Civ. Code § 1785.31(a)(2) against Defendants, including punitive damages of $100-$5,000 per willful violation.

118. Because Furnisher-Defendants are partnerships, corporations, associations, or other entities, and are therefore each a "person" as that term is defined by Cal. Civ. Code § 1785.3(j), Furnisher-Defendants are and always were obligated to not furnish information on a specific transaction or experience to any consumer credit reporting agency if they knew or should have known that the information is incomplete or inaccurate, as required by Cal. Civ. Code § 1785.25(a). Thus, Furnisher-Defendants violated Cal. Civ. Code § 1785.25(a).

////

///

///

///

///

///

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendants:

- An award of actual damages, in an amount to be determined at trial or damages of a maximum of $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), against Defendants for each incident of willful noncompliance of the FCRA;
- An award of punitive damages, as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2), against Defendants for each incident of willful noncompliance to the FCRA;
- An award for costs and reasonable attorney's fess, pursuant to 15 U.S.C. § 1681n(a)(3), against Defendants for each incident of negligent noncompliance of the FCRA;
- An award of actual damages in an amount to be determined at trial pursuant to 15 U.S.C. § 1681o(a)(1) against Defendants for each incident of negligent noncompliance of the FCRA;
- An award of costs and litigation and reasonable attorney's fees pursuant 15 U.S.C. § 1681n(a)(3) and 15 U.S.C. § 1681o(a)(2) against Defendants for each incident of noncompliance of the FCRA;
- An award of actual damages, in an amount to be determined at trial, pursuant to Cal. Civ. Code § 1785.31(a)(2)(A), against Defendants;
- Award of attorneys' fees and costs pursuant to Cal. Civ. Code § 1785.31(a)(1); and, Cal. Civ. Code § 1785.31(d) against Defendants;
- An award of punitive damages of $100-$5,000 per willful violation of Cal. Civ. Code § 1785.25(a), pursuant to Cal. Civ. Code § 1785.31(a)(2)(B) against Defendants;
- For equitable and injunctive relief pursuant to Cal. Civ. Code § 1785.31(b) against Defendants; and
- Any and all other relief the Court deems just and proper.

C.O. LAW, APC
845 15TH ST., SUITE 103
SAN DIEGO, CA 92101

**TRIAL BY JURY**

119. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: February 9, 2026

Respectfully submitted,

**C.O. LAW, APC**

By: /s/ Clark Ovruchesky
CLARK OVRUCHESKY, ESQ.
ATTORNEY FOR PLAINTIFF

C.O. LAW, APC
845 15TH ST., SUITE 103
SAN DIEGO, CA 92101